in the order that they appear on the calendar, and we will begin with Sergio Cardenas-Morfin v. Ashcroft. Good morning, Your Honors. My name is Robert Powell, appearing here on behalf of Sergio Cardenas. Mr. Cardenas is applying for cancellation of removal, a benefit that requires a showing of hardship to the qualifying relative, in this case his daughter, Violeta. We submit that the deportation hearing that was held in front of Immigration Judge Anna Ho was fundamentally unfair and a violation of due process, and also violated the statutory provision that gives Mr. Cardenas the right to a reasonable opportunity to present evidence on his behalf. There is to what extent, we have jurisdiction to entertain the constitutional due process claim. To what extent do we have jurisdiction to entertain a regulatory claim? Well, the statutory claim, I suppose, is intertwined with the due process claim. To the extent that the provision that precludes judicial review precludes review of a judgment regarding cancellation of removal. The – the – where the statute is violated, where the statute gives a person a right to present evidence or have an attorney or whatever, where that right is violated, that decision to exclude evidence is really not a – not what Congress is talking about, where they're talking about precluding review of a judgment regarding cancellation of removal. That would be our position for those reasons. Certainly, that decision to exclude evidence is part of a due process violation. Every – every evidentiary ruling, the judge says, I'm not going to hear this evidence, I think it's cumulative, or for whatever reason, every evidentiary ruling can't be – rise to the proportion of a due process violation, even if it's a mistake. Well, that's certainly correct, Your Honor, but this – in this case, we're not talking about cumulative evidence. What bothered me on your argument on the cancellation side, I think I understand your argument on the voluntary departure point, but on the cancellation, it seemed like there was a lot of evidence about hardship, you know, that he said, I can't support my parents if I go down there, I'm not going to be able to do this, it's going to be hard on Violetta if she goes down there. And there was also a written statement from him, and the judge cuts him off at some point when he wants to talk about hardship to Violetta if she stays in the U.S., but the judge says, well, she'd be with the state. So, I mean, it just seems cumulative. It doesn't seem like the judge didn't have the information about Violetta. Well – What would he have said about Violetta that wasn't – that he wasn't allowed to say? There's certainly the – there's some general comments about what would happen, what might happen to Violetta if Mr. Cardenas is deported from the United States, but he's certainly allowed to flesh that out. In particular, I think there are significant questions about if he's deported from the United States, what happens with Violetta with respect to the other family members in the United States, her half-brothers and sisters? He made that point. That was not – that was not – Well, you mean – Judge Gould asked a pointed question. What more would he say? What didn't he get to – what would he have said that he didn't get to say? He didn't get to talk about the – in detail about how Violetta is going to be supported by her family, whether she's not going to be able to live with the brothers and sisters that she has, the – whether there are – he wants to talk about whether there are any other people in the United States who can help provide care for her, which is not available. All of that evidence is certainly important and relevant and much more focused instead of a general comment that she'll have difficulties or we might have to go to the State. No, he never even – he didn't make a definite statement that he was going to leave her here if he was deported. That's correct. What he wanted to do, I guess, was portray this is going to be bad either way. If I take her to Mexico, it's bad. If she stays here, it's bad. Well, I think that it seems that the immigration judge knew it would be bad if she stayed here and he left, but said, well, you haven't said you're going to do that, and I don't need to hear more testimony on it. So she'll be with the State. I mean, that is hard, but that – this has to be an – the standard for cancellation is so strict. It has to be a very – like an extraordinary hardship, as I understand it, more than the normal hardship when someone who's deported is separated from family, because that would be the case any time someone's deported. That's correct, but that's exactly what he was not allowed to establish. He was not given a full and fair opportunity to present all of those hardships. I have to say, I read over the proceeding and the questioning and the immigration before the immigration judge, and there were aspects of it I was extremely troubled by, where she did cut off the testimony. It seemed very rude and abrupt, and actually, it seemed somewhat less than fair to me to not – to demand that he make a decision about whether he'd leave his 2-year-old daughter in the United States or take her to Mexico right then and there, and then present the evidence one way or the other, and then hold against him that he couldn't make that decision. I think that would be a very difficult decision to make. But I do think that Judge Payos and Judge Gould's questions are fair, because I'm with you on the due process – on the violation. But I really need to know specifically, what was the evidence you were precluded from presenting? I think certainly part of the evidence is the relationship between Violetta and her brothers and sisters. That evidence, which Judge Ho said, is irrelevant. She's not going to consider that relationship because these children were not adopted by the father. That, I think, is clearly incorrect, and – Is that incorrect as a matter of law? Is there a case on that point, that if they're not adopted, that you cannot consider the relationship? I think the relevant case is the matter of Racines by the Board of Immigration Appeals, in which the board clearly says an important part of this is the hardships to non-qualifying relatives. In Racines, there was an extended family, including qualifying relatives and non-qualifying relatives, actually quite similar to this case. And in Racines, the board granted the relief, where the mother – it was a mother in this case, but the sole supporter of the family. In Racines, the board specifically talks about non-qualifying relatives and says their existence cannot be ignored, which is exactly what happened here. Their existence, in effect, is ignored by Judge Ho. The government argues, I think, if I recall this in their brief, that evidence about hardship to non-qualifying relatives could be considered in an exercise of discretion if there was evidence of unusual and exceptional hardship first to a qualifying person, and that if they don't find – if the judge doesn't see that, it's not required to admit this other evidence on that issue. Well, first of all, it certainly is correct that the hardship to the non-qualifying relatives can be considered in a discretionary decision. I think that that's correct. But also, in Racines, the board specifically talks about hardships to non-qualifying relatives. And that – and the board says, and I'll read here, we must consider the totality of the burden to the entire family that would result when a single parent is taking care of that, is supporting that family. Is that a cancellation of removal case? Yes, it is. Or a suspension case? It's a cancellation of removal case. Could you at least briefly address the voluntary departure issue? Because there it seemed like the judge admitted evidence of the old tax fraud conduct, but didn't let him introduce evidence that might rebut it about his more current moral character. That's correct. And at least I think we would argue that the exclusion of that – of this evidence that's relevant is improper in light of the discretionary determination. Mr. Cardenas is eligible for voluntary departure. That was denied on a discretionary basis. I think we had also cited in our brief a non-reported BIA. What additional evidence would you offer, though, to show that he's – that factors that the immigration judge could consider that would balance out in a favor of a finding of good moral character? Well, I think – That was pretty serious. He admitted at the hearing that he had lied on his tax returns, both with respect to his brother – his deceased brother and with respect to putting the three children on the tax returns and receiving what he – I forget what he's called, credit. Right. Again, the – And I gather from the transcript that he submitted – I couldn't quite – just from reading the transcript, but my impression was that those tax returns were produced by Mr. – by the Petitioner. That's correct. So he knew. You must have submitted them to the IG. That's correct. And I gather you must have had some sense that they were not accurate. That's correct. So you knew what you were doing when you submitted them. That's correct. So you put him in there in an effort to be honest with the court. You thought you'd be able to explain what's happened since. That's correct. Okay. So now my – now my question is what would you have offered that you weren't allowed to offer at the hearing? If you were to go back and do this again, what would you tell the judge? What evidence would you produce? That's what's critical here. The – if I can say two things about that. First of all, I think evaluating his good moral character can't be done just in isolation, just looking at his relationship to Violetta. We'll rearrange all that. I want to know what you're going to present. What are you going to go in and present to the immigration judge to help rebut or to explain or to give a balanced view of your client? In other words, what's happened since 1994 when he clearly lied about his big brother claiming he was a dependent on a tax return that shows that he – that was an aberration and he has good moral character, he's done other things as a projective member of U.S. Certainly relevant since that time. His continued support for the family. In addition, he has – this is not part of the record, but he has voluntarily, which he wasn't able to do prior to the proceedings, but he has paid the back taxes. He's gone to the tax authorities and tried to straighten that out and is getting that straightened out. So there's that as well, that information that would – I thought you wanted to introduce evidence at the hearing that he helped take care of the boys of his – this woman, Sonia, his common-law wife or whatever. He helped them and helped his family. And he helped on a number of things that were not, strictly speaking, relevant on cancellation because they were not for a qualifying relative, but that you wanted to introduce that evidence relating to his good character. Right. He has shown good character in the last five years, right? That's correct. And the tax problems, it looked to me like he was about 31 when he was at the hearing and that he had done the tax fraud when he was 19 and 21 and 22 or 23 in that range. So there was quite a bit of time from the phony tax returns or the phony exemptions up to the present of the hearing. That's correct. I guess the one other point that I would make with respect to the decision made by the immigration judge and what additional evidence might be relevant, the immigration judge took the position that his relationship to the – to his non-natural children is irrelevant. And his support for the family in Mexico is irrelevant. She – even though there's some evidence in the record as to that, in making her decision, she refused to consider – she says it's irrelevant. And in making – in writing her decision, she doesn't consider those factors. And that – It might have been irrelevant on the cancellation under her view of the law, but you think it was definitely relevant to rebut the bad moral character from 8, 10 years earlier. Yes, certainly, at least that. And we submit in light of the – Let me just ask you one question for you. At the end of the hearing, the immigration judge offered – you asked for a continuance, I think it was, when all this came out. Yes. You asked for a continuance. And the judge gave you a few minutes to confer with your client. And she said – she said, well, if the Immigration Service agrees, I'm willing to go along with 120-day continuance if you withdraw your application for cancellation, I think is what she said. Correct. And you ultimately decided not to do that. And she said, well, I've got to decide my cases. I've got to get them done now. But if she had granted you a continuance, two weeks or so, and you had gone back, what would you have presented at that time? You must have something in mind. You're concerned about something. You didn't know at that time that – At that time, our concern was with the tax issues and how he's going to get that straightened out. But you also – your client hadn't made a decision about whether to take Violeta with him or not. Whether to take Violeta, yes. That would have made a difference, right, in the hardship determination? The decision whether to take him back to Mexico or not to take her back would make a difference in the hardship determination. That's relevant to the hardship determination. Whether she'd be here and end up in the custody of the state, whether she'd be there and end up whatever. I mean, that's what I don't know from this record. Correct. And that will make a difference, I guess, in terms of the analysis, of course, which way that decision is made. Well, you've well exceeded your time, so I'll – Okay. All right. I apologize. This has been bothering me. It's on my mind. It relates to voluntary departure. If, despite your best efforts, your client doesn't get cancellation and is deported, does voluntary departure as opposed to deportation affect whether he can come back on a visa and visit those kids? Yes, it does. How does it affect that? If he wanted to – well, basically, if he's deported from the United States, then he's not allowed to come back into the United States for 10 years. Now, theoretically, there is a waiver available, but, you know, those are difficult to get, and I don't think we can assume that he would be granted that waiver. If he goes back under voluntary departure, then if he gets a visitor's visa, then he can come back and visit his children. Okay. That's all I have. All right. Thank you, counsel. Thank you. Good morning. Alison Igo from the Department of Justice representing the Attorney General. The Court has actually co-opted most of my argument because you focused in on exactly what's at issue here, and that is, even if there was a due process violation, what prejudice was there? And there has to be some prejudice in order for this Court to reverse this decision. And I think the biggest problem here is that although the Petitioner has tried to avoid answering that question, this record clearly doesn't show what, if anything, he would have offered had he been able to. He wasn't allowed to make that showing. The IJA just abruptly cut him off when he was being asked questions about Violetta. You, were you there? Were you present? No, I'm not an INS attorney. Well, the INS attorney would saw a very placid judge and would object, and the objection would be sustained immediately. And he was cut off from making any record on these points. So I don't think you know and I don't think we know. Your Honor, but when the Petitioner appealed to the board, he could have made some proffer to the board that it is not in this record board, however. I would have shown that. The Court doesn't listen to that. The Board never looks at Petitioner. But it would have made a record for this Court, and this attorney is aware of that. What this Court is, and in fact, this attorney is standing here before this Court and he is still not saying what is the prejudice that came out of this denial. He says that there's a relationship. Cancellation. I'm just dealing with cancellation right now. He certainly presented evidence on the other issues, I think. But let's look at that. Well, I'm just, I would like to get to the voluntary departure issue. Respond to this point. Let's not get there quite yet. You have eight minutes. But the question. Answer my question. He did say that he was not allowed to put on evidence about the impact on Violetta of having to leave the family who she was growing up with and thought of as her brothers and sisters. Your Honor, but as you, as you previously noted, that that is an aspect that is inherent in every single deportation case. Families are separated. And, in fact, that is a big concern. But when Congress changed the law from suspension of deportation, and that was always an issue that was raised in suspension cases, Congress changed this wording to say exceptional and extremely unusual hardship. And there are a myriad of cases that say a mere separation from family members does not amount to that, because if, because if it did. Do you have a myriad of cases that talk about it for a 2-year-old? But there's, but this. Now, tell me one case that talks about a young child being separated from her mother. And. Your Honor, if you would allow me to subsequently, after your argument, to submit cases, I will. Because, because there are, there's case after case that says that the separation of family members, even between young children and parents, where a parent has to leave and leave a child behind with another parent, that that's not exceptionally unusual hardship. But if you submit one case where it's a 2-year-old being separated from her mother and her brothers and sisters, and having to be deported to Mexico with her father. But, Your Honor, again, on this record, there's no evidence that she would have been separated. This is all in speculation. The judge would not let him have a minute to make a decision that is a life-changing decision for his daughter. But I think that's unfair, Your Honor. There was, there was an extensive application that went into the court with a written declaration in which. It didn't get to that point. He clearly hadn't decided what he was going to do with the daughter. He really hadn't. And to be fair, you have to read the record that way. He said, I don't know, several times. But. She would not give him five minutes. But to be fair, Your Honor, it's his burden to show that. And when his attorney filled out this application, he was well aware that he had to show exceptionally unusual hardship. And when he came into court, he was well aware that it was his burden. And there is nothing other than the mere fact of separation. And whether the child is an infant or whether the child is 2 or whether the child is 10, I think it's unfair to say that it's different to be taken from my mother when I'm 2 than when I'm 10. I think, I think in adoption cases, generally a younger child adapts more easily than a child of 10. So if the Court's decision is that exceptionally, exceptional and extremely unusual hardship is the separation of a parent from a child, I don't think you can make an age determination. I think that the cases have shown that Congress, I, the legislative history shows that Congress was aware of that, and they, they intended, by using that language, by strengthening, increasing the requirement, that they expected that there, for there to be hardship out of the ordinary. And, and there are many cases that say that the mere separation of a family, it's inherent in deportation cases. And in fact, one of the things that, that was not apparent on this record, and I believe that it's the Petitioner's responsibility to do this. This woman is, has no legal status. It's very possible that she will take the child and go back to Mexico. But, but this Petitioner really wanted to have it both ways. He didn't want to have to put in the evidence and make a decision, because he wanted to have it both ways. And so as a result, he just didn't meet his burden. And that's. Breyer. I don't think it's like he wants to have it both ways. It's a hard, it's a hard decision to make. It's on the horns of a dilemma. Right. If she's, I take her back to Mexico, it's going to be bad for all these reasons. If I leave her here, it's going to be bad for these reasons. But he's arguing that the only thing he was not allowed to present evidence on is when she stayed, whether she, if she left, what her relationship was with her, with her brothers. And I, and in, in, none of it, none of the record shows, not anything in the brief shows, and nothing in argument here shows that that separation is extreme and unusually difficult as compared to other families. And, and it's clear that in a due process case that you have to show prejudice, and the prejudice is that the outcome would have been different. And what I submit to this Court is that. It's reasonably plausible that the outcome would have been different. Even reasonably plausible, but, but not, there has been nothing said other than that. I haven't been able to show that. How about the voluntary departure issue? I disagree. Let me tell you what has bothered me about this, and then at least part of your response could address my concern, okay? The tax fraud was when he was 19, 21, 22, and 23, as I read the record. And now it's like, you know, eight, eight years later. And what he has to show to be qualified for voluntary departure is good moral character in the prior five years. So this prior tax fraud may be relevant. It may be admissible. But how can the judge exclude rebuttal evidence that would be from him about what I've done to help these kids in the last, you know, last number of years? I don't get it. I think there has been a mischaracterization about what the judge did on voluntary departure here. There are the eligibility requirements, and then there is a, then there is a question of discretion. And the petitioner has, keeps saying that this judge made a good moral character, a negative good moral character decision based on these past, his past transgressions. And that is the record that way? I'm sorry? You don't read the record that way? Well, no. Actually, I'd like to read it. There is one paragraph on page 51 of the record that is absolutely not what the immigration judge did here. What page are you on? I'm on page 51 of the record. Hold on. Are you talking about the decision? I'm talking about the immigration judge's decision. Yes. Not what happened at the hearing. No. I'm talking about what the immigration judge found and what the immigration judge said. Let me get this through. The immigration judge never mentions good moral character. Following departure, this Court finds that Respondent is not deserving of a discretionary grant of voluntary departure because he lied on his tax return by putting his deceased brother as a defendant. Respondent is not truthful and wouldn't admit that he claimed the brother until confronted, et cetera, et cetera. Okay. So the question is, there's no – this is not a question of eligibility. This is not a question of a determination of good moral character, which is one of the eligibility requirements. This judge has said, even if this man was eligible, I am making a discretionary determination that I wouldn't grant it. And the following sentence – pardon me for interrupting – but the following sentence to that says it's not just a question of his prior tax transgressions. What the judge says is this Respondent was not truthful to this Court and would not admit that he claimed his brother until the tax return was presented to him. Anyone who's handled more than two or three trials knows that witnesses can forget things that are eight or nine years old. I mean, that is not such a dramatic point that she had to confront him with the tax return. I actually – I mean, you're entitled to argue what you're arguing, but the natural reading, I think, of this language is that she found he wasn't eligible because he had bad moral character. I disagree, Your Honor. I mean, this judge says, I am making a discretionary determination. Okay, fine. Let me answer this. If she was exercising discretion, then wasn't it error for her not to consider evidence that would be relevant to that exercise of discretion? But we don't know that she didn't. Well, she didn't let him testify about what he did for the boys. That's – that's absolutely not true, Your Honor. He does testify that the husband – I know what he did for the boys because I read the record. He said that – he said that he has been a father to these boys, even though he didn't adopt them. And I – and I wouldn't have gotten this unless I read the record, that he has supported them. There are – there are three letters from the boys in the record. The boys say he has always been there. There's testimony that the natural father is in jail, that he has been with this woman for eight years. They think of him as a father. This is all evidence in the record. And he tried to elaborate about any issue on his relationship with the boys or how he supported his parents or how he supported people in Mexico. That – That evidence is not relevant to cancellation because they're not qualifying relatives. But it would seem it would be relevant on this issue if, as you argue, she's exercising discretion. But I have to go back to the fact that if you're – in a – if – because this is not a reviewable decision, it's only reviewable if it's a due process violation. And the question is, is whether that information would have changed the outcome of this case. And one judge here thinks that it is a due process violation if – if the immigration judge –  You can argue whatever you want. But if the immigration judge excludes evidence that's admissible, that should be considered in her discretion, that is a potential due process violation. We can't review her discretion if she admitted the evidence. But if she acts kind of like, I don't know, the iron-fisted judge, whatever, I just think it's too much here. Your Honor, the government did not – in fact, didn't argue in its brief that this wasn't a due process violation. We didn't make that argument, and I'm not making that argument here. What I'm saying is that there is sufficient evidence in this record to show what this man did for these boys and what this man did for his mother and for his sister. I'm going to do a piece from one of our decisions that I find controlling on that point, which is Reyes-Melendez, and it says, But, Your Honor, I agree with all of that, and I'm not arguing that. What I'm saying is that this Petitioner, who was represented by an attorney, had some duty at some point in these proceedings, or even standing before this Court today, to show what the prejudice was from the due process violation. And what I'm saying to this – We understand your point. Thank you very much. Cardenas-Morfin v. Ashcroft is submitted. We will take up Elhimrae v. Ashcroft. Thank you.
judges: Wardlaw, Gould, Paez